UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

BELYNDA RAMINGER,

                           Plaintiff,

v.                                                   3:26-CV-1134
                                                    (AJB/ML)

SOUTHERN TIER INDEPENDENCE
CENTER, INC.,

                           Defendant.

_____

APPEARANCES:                                             OF COUNSEL:

BELYNDA RAMINGER
  Plaintiff, *Pro Se*
72 North Harrison Street
Johnson City, New York 13790

MIROSLAV LOVRIC, United States Magistrate Judge

## <u>DECISION and ORDER</u>

Plaintiff Belynda Raminger ("Plaintiff") commenced this *pro se* action against Defendant Southern Tier Independence Center, Inc ("Defendant") alleging violations of her rights pursuant to—among other statutes—the Americans with Disabilities Act.  (Dkt. No. 1.)  Plaintiff did not pay the filing fee and seeks leave to proceed *in forma pauperis* ("IFP").  For the reasons set forth below, I (1) grant Plaintiff's IFP application, and (2) direct that the Complaint be accepted for filing and requires a response.  (Dkt. Nos. 1, 2.)

## I.     PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[1] After reviewing Plaintiff's IFP application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed IFP is granted.[2]

## II.   SUFFICIENCY OF THE COMPLAINT

### A.   Legal Standard Governing Review of the Complaint

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial

---

[1]   The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[2]   Plaintiff is reminded that, although her IFP application has been granted, she is still required to pay fees that she may incur in this action, including copying and/or witness fees.

experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

**B.      Summary of the Complaint**

The Complaint alleges wrongdoing that occurred while Plaintiff was employed by Defendant and shortly after Plaintiff's employment with Defendant ended. (*See generally* Dkt. No. 1.)

More specifically, Plaintiff's Complaint details her years of employment with Defendant, which appeared to begin to sour in July 2022, when Plaintiff was reassigned to a modified office space with restricted airflow and elevated room temperatures. (Dkt. No. 1 at 10-20.) The

Complaint alleges that the modified office space exacerbated Plaintiff's physical disabilities and on numerous occasions, she requested accommodations. (*Id*.) The Complaint alleges that in late 2023/early 2024, Plaintiff joined "the new sexual health advocacy committee" at Defendant and shared a video with another employee of Defendant's. (*Id*. at 21.) Plaintiff alleges that she was "aggressively accused" of sexual harassment regarding the educational video that she privately texted to the co-worker in off-work hours. (*Id*.) Plaintiff alleges that her employment was terminated immediately and she was not provided any written notice of the charges, an opportunity to review the allegations, or any semblance of due process. (*Id*. at 22-23.)

The Complaint alleges that Defendant's stated reason for terminating Plaintiff was pretextual to mask discrimination and retaliation for Plaintiff's protected accommodation requests. (Dkt. No. 1 at 23.) Plaintiff alleges that Defendant presented fabricated documents to the New York State Department of Labor to block Plaintiff's ability to collect unemployment benefits. (*Id*. at 24-25.)

Based on these factual allegations, the Complaint asserts the following seven claims: (1) a claim of disability discrimination based on the failure to accommodate pursuant to the ADA, 42 U.S.C. § 12112(b)(5)(A); (2) a claim of disability discrimination based on disparate treatment and wrongful termination pursuant to the ADA, 42 U.S.C. § 12112(a); (3) a claim of disability discrimination and hostile work environment pursuant to the ADA, 42 U.S.C. § 12112(a); (4) a claim of retaliation pursuant to the ADA, 42 U.S.C. § 12203(a); (5) a claim of disability discrimination based on the failure to accommodate pursuant to the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(3); (6) a claim of wrongful discharge and hostile work environment pursuant to the NYSHRL, N.Y. Exec. Law § 296(1)(a); and (7) a claim of retaliation pursuant to N.Y. Exec. Law § 296(7). (Dkt. No. 1 at 25-29.) As relief,

Plaintiff seeks back pay, front pay, compensatory damages, punitive damages, and declaratory relief.  (*Id*. at 29-30.)

> ### C.    Analysis

The ADA has a number of prerequisites to filing suit.  *See Terry v. YMCA of Northeastern New York*, 24-CV-1492, 2025 WL 2933526, at *4 (N.D.N.Y. Aug. 26, 2025) (Evangelista, M.J.), *report and recommendation adopted*, 2025 WL 2778360 (N.D.N.Y. Sept. 30, 2025) (Nardacci, J.).  Plaintiff specifically alleges that she satisfied these requirements and timely commenced the action.  (Dkt. No. 1 at ¶¶ 7-11.)

Mindful of the requirement to liberally construe *pro se* pleadings, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that the Complaint alleges enough to warrant a responsive pleading.  In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly-filed motion to dismiss or for summary judgment.  Upon reviewing Plaintiff's Complaint pursuant to section 1915(e), the Court finds that Plaintiff may properly proceed with this action.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **ACCEPTED** for filing; and it is further

**ORDERED** that the Clerk of the Court provide Plaintiff with a blank summons; and it is further

**ORDERED** that Plaintiff complete the proposed summons and send it to the Clerk of the United States District Court, Northern District of New York, James Hanley U.S. Courthouse &

5

Federal Building, 7th Floor, 100 South Clinton Street, Syracuse, New York 13261-7367 within thirty days from the date of this Order; and it is further

**ORDERED** that once the Clerk has received from Plaintiff the completed, proposed summons, that the Clerk shall issue it and forward it, along with a copy of the Complaint and a packet containing General Order 25, which sets forth the Civil Case Management Plan used by the Northern District of New York, to the United States Marshal for service upon Defendant; and it is further

**ORDERED** that a formal response to the Complaint be filed by Defendant or its counsel as provided for in the Federal Rules of Civil Procedure subsequent to service of process on Defendant; and it is further

**ORDERED** that the Clerk shall schedule a Rule 16 conference before the undersigned; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in her address; her failure to do so may result in the dismissal of this action**; and it is further

**ORDERED**, that all motions shall comply with the Local Rules of Practice of the

Northern District; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Decision and Order on the

docket of this case and serve a copy upon the parties in accordance with the local rules.[3]

Dated: July 8 , 2026
      Binghamton, New York


Miroslav Lovric
U.S. Magistrate Judge

---

[3]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

2025 WL 2933526
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Elizabeth Marie TERRY, Plaintiff,
v.
YWCA OF NORTHEASTERN
NEW YORK, Defendant.

No. 1:24-CV-1492 (AMN/PJE)
|
Signed August 26, 2025

**Attorneys and Law Firms**

Elizabeth Marie Terry, 44 Washington Avenue, Schenectady, New York 12305, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER** [1]

PAUL J. EVANGELISTA, UNITED STATES MAGISTRATE JUDGE

### I. **In Forma Pauperis**

**\*1** Plaintiff pro se Elizabeth Marie Terry ("plaintiff") commenced this action on December 9, 2024, by filing a complaint. *See* Dkt. No. 1. In lieu of paying this Court's filing fee, plaintiff submitted an application for leave to proceed in forma pauperis ("IFP"). *See* Dkt. Nos. 2, 4. The undersigned has reviewed plaintiff's IFP application and determines that she financially qualifies to proceed IFP. [2] Pursuant to this review, this Court must now assess the merits of plaintiff's complaint pursuant to 28 U.S.C. §§ 1915, 1915A. [3]

### II. **Initial Review**

### A. **Legal Standards**

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

"Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." *Praileau v. Fischer*, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law....

*Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted*); see also Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted). Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see*

*also Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

**\*2** "The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure."[4] *Kastner v. Tri State Eye*, No. 19-CV-10668 (CM), 2019 WL 6841952, at \*2 (S.D.N.Y. Dec. 13, 2019) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994)).[5] Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction ... and ... a demand for the relief sought ...." FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence —and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores*, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (citations omitted).

### III. **Discussion**

#### A. **Plaintiff's Complaint** [6]

On a civil complaint form, plaintiff checks the box that indicates that this Court has subject matter jurisdiction pursuant to federal question jurisdiction. *See* Dkt. No. 1 at 3.[7] Plaintiff states that she had been a YWCA resident "at the Northeastern New York location since mid-2022." Dkt. No. 1-1. She alleges that her Fourteenth Amendment rights have been violated because she has owned a business since 2011, and "the YWCA previously explained in its 2019 [and] 2023 Resident Handbook, that YWCA residents are not allowed to operate/own a business" and "the Fourteenth Amendment protects businesses." Dkt. No. 1 at 3. Plaintiff further states that "the YWCA previously communicated that [she is] a person with a disability by explaining that their residents are not allowed to operate a private business, and are not eligible for employment [with] the YWCA on a full time basis." *Id.* at 4. Plaintiff's complaint also states that she submitted a complaint with the Equal Employment Opportunity Commission ("EEOC") and cites "EEOC law on disabilities 29 C.F.R. § 1630.2." *Id.* at 3; *see* Dkt. No 1-1.

**\*3** In exhibits to her complaint, plaintiff alleges that her prior roommate was "raped," and that plaintiff was sexually harassed by YWCA staff. Dkt. No. 1-1. Attached to plaintiff's complaint are copies of the 2019, 2023, and 2024 YWCA

Resident Handbooks; a December 11, 2023, email from the EEOC confirming that plaintiff filed an employment discrimination claim against the YWCA; and multiple emails between plaintiff and Tamara Flanders, YWCA's Housing Director. *See* Dkt. Nos. 1-3, 1-4, 1-5; Dkt. No. 1-2 at 1-4; Dkt. No. 6.

## B. **Analysis** [8]

Liberally construing plaintiff's complaint, plaintiff seeks to bring claims under the Americans with Disabilities Act ("ADA") and under 42 U.S.C. § 1983, alleging that she was discriminated against on the basis her disability and that her Fourteenth Amendment rights were violated because she believes she is not permitted to operate a business out of the room she rents from YWCA. *See generally* Dkt. No. 1, Dkt. No. 6; *see also Triestman,* 470 F.3d at 475. ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' ") (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)). Plaintiff also alleges that she has been sexually harassed by YWCA staff. *See* Dkt. No. 1-1.

### 1. **Fed. R. Civ. P. 8**

As a threshold matter, plaintiff's complaint fails to satisfy the pleading requirements of Rule 8. *See* FED. R. CIV. P. 8(a). Plaintiff's complaint does not provide "a short and plain statement of the claim showing" why she is entitled to relief. *Id*. Plaintiff's complaint alleges that the YWCA discriminated against her because she is disabled and that a YWCA staff member sexually harassed her. *See* Dkt. No. 1 at 3-4, Dkt. No. 1-1. Yet, plaintiff has failed to provide any details or information explaining (1) how she is disabled, or (2) how she was discriminated against based on her disability. *See generally* Dkt. No. 1. She also fails to demonstrate that the YWCA is subject to § 1983 liability. *See id*. Further, plaintiff does not include any information surrounding her allegation that she was sexually harassed. *See generally* Dkt. No. 1; Dkt. No. 1-1. [9] Without this information, plaintiff's complaint does not provide "fair notice of the claim[s] being asserted" against the YWCA such that it would have an adequate opportunity to file an answer and "prepare an adequate defense." *Flores,*

189 F.R.D. at 55; FED. R. CIV. P. 8(a)(2). Therefore, the undersigned recommends that plaintiff's complaint, raising claims for disability discrimination under the ADA, violations of her Fourteenth Amendment rights under Section 1983, and sexual harassment, be dismissed without prejudice and with leave to amend for failure to satisfy Rule 8's pleading requirements. *See Salahuddin,* 861 F.2d at 42; FED. R. CIV. P. 8(a)(2).

### 2. **Timeliness and Prelitigation Requirements**

**\*4**  A plaintiff alleging disability discrimination in violation of the ADA must file an EEOC claim within 180 days of the alleged discriminatory action if no claim was filed with a state or local agency, or within 300 days of the alleged discriminatory action if the plaintiff filed a claim with a state or local agency. *See Constantine v. U-Haul Int'l Inc.,* No. 1:15-CV-1204 (MAD/CFH), 2015 WL 13744409, at \*1 (N.D.N.Y. Oct. 9, 2015), *report and recommendation adopted,* No. 1:15-CV-1204 (MAD/CFH), 2015 WL 7272211 (N.D.N.Y. Nov. 16, 2015) (quoting *McNight v. Dormitory Auth. of State of N.Y.,* 995 F. Supp. 70, 76 (N.D.N.Y. 1998) (quoting 42 U.S.C. § 2000e-5(e))). "Thus, only after charges are brought before the EEOC and a right-to-sue letter is obtained may an aggrieved party bring an action for relief in federal court." *Id*. (quoting *Mazzeo-Unum v. Dep't of Transp.,* No. 1:12-CV-1856, 2013 WL 2636159, at \*2 (N.D.N.Y. June 12, 2013) (quoting 42 U.S.C. § 2000e-5(e))) (internal quotation marks omitted). "A right to sue letter is also a statutory prerequisite to suit under the ADA." *Id.* (citing *Duttweiler v. Upstate Bldg. Maint. Companies, Inc.,* No. 5:05-CV-886 (NAM), 2006 WL 3371754, at \*1 (N.D.N.Y. Nov. 20, 2006) (citing 42 U.S.C. §§ 2000e-5(e) (1); 12117(a))) ("[D]efendants point out that plaintiff has not exhausted her administrative remedies because she has not obtained a right-to-sue letter from the Equal Employment Opportunities Commission ('EEOC'). Such a letter is a statutory prerequisite to suit under the Americans with Disabilities Act ('ADA,' 42 U.S.C. § 12101 *et seq.*) ...."); *see also Mount Sinai Medical Ctr.,* 882 F. Supp. 353, 355 (S.D.N.Y. 1995) (dismissing the plaintiff's ADA complaint for lack of subject matter jurisdiction because the plaintiff did not demonstrate the filing of an EEOC claim and receipt of a right-to-sue letter before commencing suit); *see also Redlich v. Albany Law Sch. of Union Univ.,* 899 F. Supp. 100, 104 (N.D.N.Y. Oct. 3, 1995) (citing *Bent v. Mount Sinai Med. Ctr.,* 882 F. Supp. 353, 355 (S.D.N.Y. 1995)) ("Thus, absent [the] plaintiff's filing of a complaint with the EEOC

and [her] receipt of a right to sue letter, the Court lacks subject matter jurisdiction to entertain [the] plaintiff's ADA claim.") (internal quotation marks and additional citations omitted).

"A plaintiff must bring the federal court action within ninety days of receiving a right-to-sue letter." *Johnson v. Frida's Bakery Inc.*, No. 5:19-CV-1613 (DNH/CFH), 2020 WL 1904061, at *4 (N.D.N.Y. Apr. 17, 2020) (citing *Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994) ("[A] suit must be commenced not more than 90 days after receipt of the right-to-sue letter")). "It is well settled that if a plaintiff does not file suit within 90 days of receiving the EEOC's right-to-sue letter, the action must be dismissed, unless extraordinary circumstances have been established." *Id*. (quoting *Ernestine Banks v. Avis Budget Grp.*, 1:16-CV-1320 (MAD/DJS), 2018 WL 922147, at *2 (N.D.N.Y. Feb. 15, 2018) (citing *Skibinski v. Zevnik, Horton, Guibord, McGovern, Palmer & Fognani, LLP*, 57 F. App'x 900, 901 (2d Cir. 2003) (summary order))). "The filing deadline for the formal complaint is not jurisdictional and, like a statute of limitations, is subject to equitable tolling[, which] is only appropriate in rare and exceptional circumstances." *Id*. (quoting *Ernestine Banks*, 2018 WL 922147, at *2 (quoting *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003))) (internal quotation marks and citations omitted).

Here, plaintiff's complaint attaches an email from the EEOC, dated December 23, 2023, confirming that she filed an employment discrimination claim against the YWCA and advising her that she has "not yet scheduled an interview to discuss [her] claim," and her failure to do so will mean that the EEOC "will not take any action on your inquiry." Dkt. No. 6. Plaintiff filed this lawsuit on December 9, 2024. *See* Dkt. No. 1. However, plaintiff does not (1) allege she received a right-to-sue letter prior to filing her complaint with the Court, (2) provide the Court a copy of the right-to-sue letter, or (3) state that she commenced this action within ninety days of receipt of a right-to-sue letter. *See generally* Dkt. No. 1; *Constantine*, 2015 WL 13744409, at *1-2. Further, plaintiff has not alleged an extraordinary circumstance tolling the ninety-day filing requirement. *See generally* Dkt. No. 1; *Constantine*, 2015 WL 13744409, at *2.

 **\*5** Moreover, "even if the Court assumes she had met all of these requirements (or that equitable tolling applies), it is unclear whether this federal action would be timely." *Cao-Bossa v. Pulcher*, No. 1:18-CV-1009 (LEK/CFH), 2018 WL 5839692, at *3 (N.D.N.Y. Nov. 8, 2018), *report and recommendation adopted as modified*, No. 1:18-CV-1009

(LEK/CFH), 2019 WL 502130 (N.D.N.Y. Feb. 8, 2019). Plaintiff's complaint, as written, fails to provide a date on which an adverse action took place. *See generally* Dkt. No. 1. As such, the undersigned cannot determine whether plaintiff satisfied the prelitigation requirement of commencing an EEOC claim within 180 days of the alleged discriminatory action. *See Constantine*, 2015 WL 13744409, at *2. Accordingly, plaintiff's complaint must also be dismissed because plaintiff has failed to demonstrate she satisfied the prelitigation requirements necessary to proceed on her apparent ADA disability discrimination claim before this Court. *See id*. (first citing *Cornwell*, 23 F.3d at 706, then quoting *Ernestine Banks*, 2018 WL 922147, at *2). However,

> it is possible that, if plaintiff did receive a right to sue letter, she commenced this action within ninety days after receipt of that letter ... [A]s the complaint is completely silent as to whether plaintiff timely filed a complaint before the EEOC, received a right to sue letter, and timely commenced this action, due to plaintiff's pro se status, it is recommended that plaintiff's [ADA claims] be dismissed without prejudice and with opportunity to amend to allow plaintiff to provide such information.

*Cao-Bossa*, 2018 WL 5839692, at *3; *see Constantine*, 2015 WL 13744409, at *1.

### 3. **Disability Discrimination: Americans with Disabilities Act and New York State Human Rights Law**

Even if plaintiff can demonstrate that she met all the prelitigation requirements, her complaint, as currently pleaded, fails to state a claim for disability discrimination under the ADA or New York State Human Rights Law ("NYSHRL"). The ADA states that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The "term

'discriminate against a qualified individual on the basis of disability' includes" "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee." *Id.* § 12112(b)(1). Similarly, the New York State Human Rights Law ("NYSHRL") provides that

> [i]t shall be an unlawful discriminatory practice ... [f]or an employer ... because of an individual's ... disability, ... to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

N.Y. Exec. Law § 296(1)(a).

> To establish a *prima facie* claim of disability discrimination for failure to hire under the ADA, a plaintiff must demonstrate: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability.

*Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, No. 19-CV-6034 (JPO), 2020 WL 4547317, at *3 (S.D.N.Y. Aug. 6, 2020) (citing *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (per curiam)). "[T]he evidence necessary for the plaintiff to satisfy this initial burden is 'minimal' and '*de minimis*[.]' " *Milner-Koonce v. Albany City Sch. Dist.*, No. 1:21-CV-1271 (LEK/CFH), 2022 WL 1500995, at *6 (N.D.N.Y. May 12, 2022), *report and recommendation adopted as modified,* No. 1:21-CV-1271 (LEK/CFH), 2022 WL 2339443 (N.D.N.Y. June 29, 2022)

(quoting *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (citations omitted)).

**\*6** The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). However, "[t]he mere presence of a medical condition does not establish that a plaintiff is disabled." *Milner-Koonce,* 2022 WL 1500995, at *6 (quoting *O'Donnell v. King B 100, LLC,* No. 1:14-CV-1345 (TJM), 2016 WL 7742779, *9 (N.D.N.Y. May 3, 2016) (additional citations omitted). "In addition, it is well settled that temporary impairments with little or no long-term permanent impact are not disabilities under the ADA." *Id.* (quoting *O'Donnell,* 2016 WL 7742779, *9) (additional citations omitted)). "Temporary, or transitory, impairments are impairment[s] with an actual or expected duration of 6 months or less." *Pitter v. Target Corp.*, No. 1:20-CV-183 (MAD/CFH), 2020 WL 8474858, at *10 (N.D.N.Y. Sept. 1, 2020), *report and recommendation adopted,* No. 1:20-CV-183 (MAD/CFH), 2020 WL 7767629 (N.D.N.Y. Dec. 30, 2020) (quoting 42 U.S.C. § 12102(3)(B)); *see Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 250 (E.D.N.Y. 2015) (citing 42 U.S.C. § 12102(3)(B)) ("An individual cannot be regarded as disabled under the ADA where the impairment is transitory and minor.").

The NYSHRL defines "disability" as:

> (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which,

upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held.

*Pitter*, 2020 WL 8474858, at \*10-11 (quoting N.Y. Exec. Law §§ 292(21)(a)-(c)).

Here, even affording plaintiff due solicitude, she has not demonstrated a prima facie disability discrimination claim based on failure to hire. *See Scalercio-Isenberg*, 2020 WL 4547317, at \*3. Even assuming plaintiff could demonstrate that the YWCA is a "covered entity"[10] under the ADA, something she has not addressed in her complaint, plaintiff has not adequately alleged an adverse employment action in claiming, conclusorily, that the YWCA has a policy of refusing to hire disabled people or disabled YWCA residents for full-time employment. *See* Dkt. No. 1 at 4. Although plaintiff claims that "[t]he YWCA communicated that I am a person with a disability ... and are (sic) not eligible for employment [with] the YWCA on a full[-]time basis[,]" plaintiff does not provide any additional explanation, context, or evidence supporting her allegation. *Id*. Plaintiff does not state that she applied for a position with the YWCA nor allege that "she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation." *Scalercio-Isenberg*, 2020 WL 4547317, at \*3. "Plaintiff does not explain what her disability is, whether she has a diagnosis for an impairment, or how such disability substantially limits a major life activity." *Milner-Koonce*, 2022 WL 1500995, at \*7. Further, she does not provide a "record of such impairment" or "a condition regarded by others as such an impairment." *Pitter*, 2020 WL 8474858, at \*10-11. As such, plaintiff's apparent assertion that the YWCA refused to hire her for full-time employment because she is disabled does not suffice to state a claim for failure to hire due to a disability in violation of the ADA or NYSHRL.[11]

 **\*7** Accordingly, the undersigned concludes that plaintiff's compliant, as written, fails to establish "a *prima facie* claim of disability discrimination for failure to hire." *Scalercio-Isenberg*, 2020 WL 4547317, at \*3. However, in light of plaintiff's pro se status, and because it is possible that plaintiff could provide the information necessary to establish a prima facie claim of disability discrimination under the ADA and/or NYSHRL, the undersigned recommends dismissing

plaintiff's disability discrimination claim without prejudice and with leave to amend because the above-discussed defects could potentially be cured with a better pleading.

### 4. **Housing Discrimination**

#### a. **FHA and NYSHRL**

An attachment to plaintiff's complaint briefly references that her "previous roommate was raped by YWCA staff" and that she was sexually harassed by the YWCA staff. Dkt. No. 1-1. Reading plaintiff's complaint liberally, and affording her due solicitude, plaintiff's complaint could be interpreted as raising a claim under the Fair Housing Act ("FHA") or the NYSHRL.

"Sexual harassment claims are cognizable under the FHA and the NYSHRL." *Glover v. Jones*, 522 F. Supp. 2d 496, 503 (W.D.N.Y. 2007) (citing *Rich v. Lubin,* No. 02 Civ. 6786 (TPG), 2004 WL 1124662 at \*4 (S.D.N.Y. May 20, 2004)). "The legal standard for sexual harassment claims under the FHA has been analogized in the Second Circuit to the standard pertaining to hostile work environment claims under Title VII." *Id*. (quoting *Rich*, 2004 WL 1124662 at \*4); *see also Spavone v. Transitional Servs. of New York Supportive Hous. Program (TSI)*, No. 16-CV-1219 (MKB), 2016 WL 2758269, at \*6 (E.D.N.Y. May 12, 2016) (same). A plaintiff claiming sexual harassment leading to a hostile living environment must demonstrate (1) "that she was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile environment," and (2) "that a basis exists for imputing the allegedly harassing conduct to the defendants." *Id*. (quoting *Rich*, 2004 WL 1124662 at \*4). "Isolated or sporadic sexually inappropriate acts are not sufficiently pervasive and severe to constitute sexual harassment under the FHA." *Mohamed v. McLaurin*, 390 F. Supp. 3d 520, 549 (D. Vt. 2019) (quoting *Rich*, 2004 WL 1124662 at \*4, and citing *Shellhammer v. Lewallen*, 770 F.2d 167 (6th Cir. 1985)). "*Quid pro quo* [sexual] harassment ... occurs when housing benefits are explicitly or implicitly conditioned on sexual favors." *Glover*, 522 F. Supp. 2d at 503 (quoting *Honce v. Vigil,* 1 F.3d 1085, 1089 (10th Cir.1993)) (internal quotation marks and additional citation omitted).

A plaintiff asserting a hostile housing environment claim pursuant to Section 3604(b) must establish that (1) she

was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile housing environment, (2) the harassment was because of the plaintiff's membership in a protected class, and (3) the defendant(s) is responsible for the allegedly harassing conduct towards the plaintiff.

*Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 277 (S.D.N.Y. 2019) (citing *Cain v. Rambert*, No. 13-CV-5807 (MKB), 2014 WL 2440596, at *5 (E.D.N.Y. May 30, 2014)). "As with any claim asserted pursuant to the FHA, a plaintiff must also show a relationship between the discriminatory conduct and housing." *Cain*, 2014 WL 2440596, at *5 (E.D.N.Y. May 30, 2014) (citing *People of State of N.Y. by Abrams v. Merlino*, 694 F. Supp. 1101, 1104 (S.D.N.Y. 1988) ("[P]laintiffs, to succeed, must demonstrate ... a relationship between the harassment and housing.")).

Although plaintiff's complaint alleges that she was sexually harassed by YWCA staff, plaintiff has failed to provide any details about this incident. *See generally* Dkt. No. 1; Dkt. No. 1-1. Plaintiff does not state when or where this incident or incidents occurred, by whom she was sexually harassed, or any details concerning the severity or frequency of the sexual harassment. *See id*. Plaintiff's complaint, as written, does not establish either sexual harassment creating a hostile living environment or quid-pro-quo sexual harassment. *See Glover*, 522 F. Supp. 2d at 503 (citing *Rich*, 2004 WL 1124662 at *4). Plaintiff does not identify membership in a covered protected class nor allege that she was sexually harassed due to this membership. *See Favourite*, 381 F. Supp. 3d at 277. Further, to the extent that plaintiff may be seeking this Court to initiate criminal charges against the unidentified YWCA staff member, there is no private cause of action to enforce state or federal criminal statutes. *See, e.g.*, *McFadden v. Ortiz*, 5:12-CV-1244 (MAD/ATB), 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013).

**\*8** The undersigned concludes that, in its current form, plaintiff's complaint does not demonstrate a FHA or NYSHRL sexual harassment claim. However, because it is possible that plaintiff could plead such facts, the undersigned recommends dismissing plaintiff's sexual harassment claim without prejudice and with leave to amend because the

pleading defects discussed above could be potentially cured by a better pleading.

### 4. 42 U.S.C. § 1983

#### a. State Action

Plaintiff's complaint alleges that the YWCA violated her Fourteenth Amendment due process rights by preventing her from operating a business out of the room she rents from the YWCA. *See* Dkt. No. 1 at 3-4. However, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Gerken v. Gordon*, No. 1:24-CV-435 (MAD/CFH), 2024 WL 4608307, at *11 (N.D.N.Y. Oct. 29, 2024), *report and recommendation adopted,* No. 1:24-CV-435 (MAD/CFH), 2024 WL 5001402 (N.D.N.Y. Dec. 6, 2024) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "The traditional definition of acting under color of state law requires that the defendant ... exercise[ ] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (quoting *West*, 487 U.S. at 49) (internal quotation marks and citation omitted). "Because the United States Constitution regulates only the Government, not private parties, [with respect to a claim brought under § 1983,] a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Id*. (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)) (internal quotations omitted) (quoting *United States v. Int'l Brotherhood of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)); *see Baum v. N. Dutchess Hosp.*, 764 F. Supp. 2d 410, 419 (N.D.N.Y. 2011) ("State action is an essential element of any § 1983 claim.") (first citing *Lugar v. Edmondson Oil Co.*, Inc., 457 U.S. 922, 934 (1982) (explaining that the "under color of any statute" language is to enforce the provisions of the Fourteenth Amendment and that if a defendant's conduct satisfies the state-action requirement then that conduct is also action under color of state law under § 1983), then citing *Rounseville v. Zahl*, 13 F.3d 625, 627-28 (2d Cir. 1994) (noting the state action requirement for § 1983)); *Pearson v. Chipotle Mexican Grill of Colorado*, No. 1:15-CV-545 (BKS/CFH), 2015 WL 3604089, at *3 (N.D.N.Y. June 4, 2015) (quoting *Agustus v. AHRC Nassau,* 13-CV-6227 (PKC), 2013 WL 6173782, at *2 (E.D.N.Y. Nov. 13, 2013) (quoting *American Mfrs. Mut. Ins.*

*Co. v. Sullivan,* 526 U.S. 40, 50 (1982) (additional citations omitted))) ("As the Supreme Court has held, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (internal quotation marks omitted).

"Private parties generally are not state actors and therefore are not usually liable under [§] 1983." *Gerken,* 2024 WL 4608307, at *11 (quoting *Yi Sun v. Saslovsky,* No. 1:19-CV-10858 (LTS), 2020 WL 6828666, at *7 (S.D.N.Y. Aug. 6, 2020)) (citing *Sykes v. Bank of America,* 723 F.3d 399, 406 (2d Cir. 2013)); *see Basile v. Connolly,* 538 F. App'x 5, 7 (2d Cir. 2013) (summary order) ("[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law.").

**\*9** A private party's actions can be considered state action in three situations:

> (1) the private party acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) the private party willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) the state has delegated a public function to the private party (the "public function" test).

*Gerken,* 2024 WL 4608307, at *11. (quoting *Rogers v. City of New Rochelle*, No. 1:19-CV-0479 (CM), 2019 WL 5538031, at *2 (S.D.N.Y. Oct. 25, 2019)) (citing *Fabrikant v. French,* 691 F.3d 193, 207 (2d Cir. 2012)). "The fundamental question under each test is whether the private party's challenged actions are 'fairly attributable' to the State." *Id.* (quoting *Rogers,* 2019 WL 5538031, at *2) (quoting *Rendell-Baker v. Kohn,* 457 U.S. 830, 838 (1982)). "[A] State normally can be held responsible for a private decision ... when it has ... provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982)) (citations omitted). "The State's '[m]ere approval of or acquiescence in the initiatives of a private party[, however,] is not sufficient to justify holding the State responsible for those initiatives.' " *Id.* (quoting *Blum,* 457 U.S. at 1004-05).

Here, the YWCA is a § 501(c)(3) charity. [12] Therefore, the YWCA is a private party and not state actor. *See Gerken,* 2024 WL 4608307, at *11; *see generally Lopez v. WYCA of Northeast New York*, 1:24-CV-1516 (BKS/PJE), 2025 WL 641569, at *7 (N.D.N.Y. Feb. 25, 2025) (holding that statements that the YWCA receives federal funding did not demonstrate that the YWCA is a state actor). Plaintiff has not alleged that the YWCA has taken any action that can be "fairly attributable" to the state. *Id.* The only allegation raised in plaintiff's complaint is that she disagrees with the YWCA's rules forbidding her from operating a business out of the room that she rents from the YWCA. *See* Dkt. No. 1 at 3-4. However, "[p]laintiff fails to allege any facts plausibly suggesting a nexus between defendant[ ] and any state action." *Pearson,* 2015 WL 3604089, at *3.

Moreover, even if plaintiff could amend to demonstrate that the YWCA was acting under the color of state law, she fails to demonstrate how a policy prohibiting her to operate a business out of her residence at the YWCA violates her Fourteenth Amendment rights. [13] Even if she had made such a claim and could demonstrate that such a policy would be violative of her constitutional rights, plaintiff has also not established that the YWCA prevented residents from operating a business out of their rooms; rather, from the exhibits she submits, it appears that the YWCA required preapproval from the YWCA housing director before "working from home." Dkt. No. 1-5 at 5; Dkt. No. 1-4 at 6. It also seems as though the former rule relating to operating businesses out of the YWCA residences was only that residents were not permitted to use the YWCA address as their business address as the YWCA is "already a business address." Dkt. No. 1-2 at 1. [14] Plaintiff further fails to allege that she sought to operate a business out of her residence and the YWCA prohibited her from doing so.

**\*10** Plaintiff's argument appears to be a disagreement with, or misunderstanding of, the YWCA's residency rules. However, even if plaintiff alleged that the policy still existed during the time that she resided at the YWCA and was applied to her in a way that prohibited her from operating her business out of her YWCA room, she has failed to demonstrate how this would amount to a violation of her due process or equal protection rights. [15] As such, the undersigned concludes that plaintiff's complaint fails to state a claim under Section 1983. Although it appears unlikely that plaintiff will be able to demonstrate that the YWCA was acting under the color of

state law, out of an abundance of caution – keeping in mind the Second Circuit's directives as to special solicitude – the undersigned recommends that plaintiff's Section 1983 claim be dismissed without prejudice and with leave to amend such that plaintiff may attempt to demonstrate that Section 1983 applies to the YWCA, explain how the YWCA policy was applied to her, and demonstrate how such policy violated her Fourteenth Amendment rights. *See Lopez,* 2025 WL 641569, at \*7.

## IV. **Leave to Amend**

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gerken*, 2024 WL 4608307, at \*15 (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation and internal quotation marks omitted)). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " *Id.* (citing *Edwards v. Penix*, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019)) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Here, as noted, the undersigned concludes that plaintiff's claims *may* potentially be cured by a better pleading; thus, it is recommended that the entirety of plaintiff's complaint be dismissed without prejudice and with opportunity to amend. [16]

## IV. **Conclusion**

**\*11  WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. Nos. 2, 4) is **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED without prejudice and with leave to amend**; it is further

**RECOMMENDED**, that in the event the District Judge, following review of this Report-Recommendation and Order, permits plaintiff an opportunity to amend, plaintiff be given thirty (30) days from the District Judge's Decision and Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not timely file an amended complaint pursuant to the District Judge's Decision and Order, the Clerk may close this case without the requirement of further order of the Court; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [17]

**All Citations**

Slip Copy, 2025 WL 2933526

---

### Footnotes

[1]    This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(d).

[2]    Plaintiff is advised that although she has been granted IFP status, she is still required to pay any fees and costs she may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

3    These requirements apply equally to non-prisoner pro se litigants. *See* N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a *non-prisoner pro se litigant* commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.") (emphasis added).

4    Hereinafter, "Fed. R. Civ. P."

5    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

6    Plaintiff included multiple attachments with her complaint. *See* Dkt. Nos. 1-1, 1-2, 1-3, 1-4, 1-5; Dkt. No. 6. These attachments have also been reviewed in connection with the initial review of plaintiff's complaint. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal quotation marks and citations omitted).

7    The undersigned's citations to filings connected with this motion refer to the pagination located at the header of each page, which the Court's electronic filing and case management program generated, rather than the individual pagination of each document.

8    Plaintiff's civil cover sheet checks the box indicating "U.S. Government" as the basis of jurisdiction. *See* Dkt. No. 1-6. However, the United States Government is not a defendant in this action. *See generally* Dkt. No. 1. Reading plaintiff's complaint liberally and affording her due solicitude, it appears plaintiff likely intended to mean that her claims involve federal question jurisdiction. *See generally Cinotti v. Adelman*, 709 *F. App'x* 39, 40 (2d Cir. 2017) (summary order) ("[A]lthough [the plaintiff's] pro se complaint does not refer to 42 U.S.C. § 1983, the district court should have construed it liberally as asserting § 1983 claims, which provide a basis for federal question jurisdiction.").

9    To the extent possible, the undersigned discusses the merits of these issues and additional deficiencies *infra*.

10    The ADA prohibits a "covered entity" from discriminating against "a qualified individual on the basis of disability[.]" 42 U.S.C. § 12112(a). "[C]overed entit[ies]" include, among other kinds of institutions, "employer[s]." *Id.* § 12111(2). And an "employer" is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year[.]" *Id.* § 12111(5)(A).

*Mirabal v. Alumaline, Inc.*, No. 21-CV-5356-ENV-SJB, 2023 WL 8183324, at *1 (E.D.N.Y. Nov. 27, 2023).

11    Factually, the undersigned observes that the policy upon which plaintiff appears to base her disability discrimination claim – that the YWCA does not hire residents for full time employment – does not appear to be a current YWCA policy. *See* Dkt. No. 1-2 at 1-3 (email chain between plaintiff and the YWCA housing director); *see also* Dkt. Nos. 1-3, 1-4, 1-5 (YWCA Resident Handbooks from 2019, 2023, and 2024). In emails between plaintiff and the YWCA housing director, the YWCA housing director indicated that the policy against residents operating a business out of their YWCA residence "has been updated" and the policy plaintiff is referring to is "from many years ago that is not a current policy." Dkt. No. 1-2 at 1, 3.

12    *See* YWCA NORTHEASTERN NY, *https://www.ywca-neny.org/* (last visited Aug. 18, 2025).

13    In citing the Fourteenth Amendment without any context, the undersigned has no way of knowing whether plaintiff is attempting to plead a due process or equal protection claim.

14    It appears that the 2019 and 2023 resident handbooks had a policy that "[n]o resident may operate a business out of the YWCA North Eastern NY. If you have a work from home opportunity please seek approval from the

housing coordinator before beginning." Dkt. Nos. 1-5 at 5; 1-4 at 6. However, the 2024 Resident Handbook does not contain this policy. *See generally* Dkt. No. 1-3. Further The YWCA housing director explained that the policy forbidding YWCA residents from working out of their homes had to do with residents not being permitted to use the YWCA address as a business address. *See* Dkt. No. 1-2 at 1.

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law ...." U.S. CONST. amend. XIV, § 1. "Those seeking to invoke its protection must establish that one of these interests is at stake." *Cullen v. Mello*, No. 23-413, 2024 WL 1904571, at *1 (2d Cir. May 1, 2024) (internal quotation marks and citations omitted). "The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes, and, if so, what process was due before plaintiff could be deprived of that interest." *Nicholas v. Seggos*, No. 8:23-CV-463 (GTS/CFH), 2023 WL 6121164, at *5 (N.D.N.Y. Sept. 19, 2023), *report and recommendation adopted,* No. 8:23-CV-0463 (GTS/CFH), 2023 WL 7004103 (N.D.N.Y. Oct. 24, 2023) (quoting *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (citation omitted)). "The Equal Protection Clause requires state actors to treat similarly situated persons alike." *Barzee v. Tyler*, No. 8:21-CV-902 (GTS/CFH), 2022 WL 1406606, at *9 (N.D.N.Y. May 3, 2022), *report and recommendation adopted,* No. 8:21-CV0 0902 (GTS/CFH), 2022 WL 2079084 (N.D.N.Y. June 9, 2022) (citing *City of Cleburn, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "Typically an equal protection claim is brought by a member of a vulnerable class, who alleges discrimination based upon that membership." *Id.* (quoting *AYDM Assocs., LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016)) (citing *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)).

In the event the District Judge adopts the undersigned's Report-Recommendation & Order and plaintiff is permitted to amend her complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference. Any amended pleading supersedes and replaces a prior pleading in its entirety. An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen-day (14) period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(c).

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2778360
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Elizabeth Marie TERRY, Plaintiff,
v.
YWCA OF NORTHEASTERN
NEW YORK, Defendant.

1:24-cv-01492 (AMN/PJE)
|
Signed September 30, 2025

**Attorneys and Law Firms**

ELIZABETH MARIE TERRY, 730 Plymouth Avenue – Apt. 3, Buffalo, New York 14213, Plaintiff pro se.

### ORDER

Anne M. Nardacci, United States District Judge:

### I. INTRODUCTION

 **\*1** On December 9, 2024, plaintiff *pro se* Elizabeth Marie Terry ("Plaintiff") commenced this action against defendant YWCA of Northeastern New York ("Defendant"). Dkt. No. 1 ("Complaint"). Plaintiff sought and ultimately received leave to proceed *in forma pauperis*. Dkt. Nos. 2, 4, 7 at 1-2. [1]

This matter was referred to United States Magistrate Paul J. Evangelista, who reviewed the Complaint pursuant to 28 U.S.C. § 1915(e) and, on August 26, 2025, issued a report-recommendation and order recommending that the Complaint be dismissed with leave to amend. Dkt. No. 7 ("Report-Recommendation"). Magistrate Judge Evangelista advised that pursuant to 28 U.S.C. § 636(b)(1), Plaintiff had fourteen days within which to file written objections and that failure to object to the Report-Recommendation within fourteen days would preclude appellate review. *Id.* at 23. Plaintiff filed objections on September 10, 2025. Dkt. No. 10.

For the reasons set forth below, the Court adopts the Report-Recommendation in its entirety.

### II. STANDARD OF REVIEW

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 229 (citing Fed. R. Civ. P. 72(b) advisory committee's notes to 1983 addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir*, No. 08-cv-322, 2011 WL 933846, at \*1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing such a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*, No. 21-cv-01138, 2023 WL 2552452, at \*1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 17-cv-0367, 2017 WL 5484663, at \*1 n.1 (N.D.N.Y. Nov. 14, 2017)).

 **\*2** "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal ...." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920, at \*2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 22-cv-567, 2022 WL 16918287, at \*1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify,

in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

### III. DISCUSSION

The Court adopts those aspects of the Report-Recommendation to which no party has raised a specific objection, finding no clear error therein, including the background and the legal framework set forth in the Report-Recommendation, familiarity with which is presumed for purposes of this decision.

As detailed at length in the Report-Recommendation, Magistrate Judge Evangelista liberally construed Plaintiff's allegations as seeking to bring discrimination claims and a claim for violation of her Fourteenth Amendment rights. Dkt. No. 7 at 5-21. After examining the various deficiencies in Plaintiff's allegations, including finding that she had failed to satisfy Rule 8 of the Federal Rules of Civil Procedure, he ultimately concluded that she had failed to state a claim. *Id.* Given the nature of these deficiencies, however, Magistrate Judge Evangelista recommended dismissal with leave to amend. *Id.* at 22-23.

Plaintiff's objections largely summarize the Report-Recommendation and identify no error in Magistrate Judge Evangelista's findings or recommendations. Dkt. No. 10 at 1-4. To the extent that Plaintiff takes issue with the Report-Recommendation, the nature of her challenge is difficult to discern. *Id.* at 4 (objecting to consideration of whether Plaintiff had stated a disability discrimination claim because "[t]he Plaintiff does not have a disability and is not alleging that she was discriminated against on the basis of her literally having a disability"); *id.* at 5 (objecting to recommendation that Plaintiff receive leave to amend the Complaint).

Because Plaintiff has not raised any properly preserved objection to the Report-Recommendation, the Court reviews the Report-Recommendation for clear error. *Petersen*, 2 F. Supp. 3d at 228-29; *Caldwell*, 2022 WL 16918287, at *1. Upon review, the Court discerns no clear error in Magistrate Judge Evangelista's findings and recommendations. *See generally* Dkt. No. 7. As a result, the Report-Recommendation is adopted in its entirety.

### IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 7, is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Plaintiff's Complaint, Dkt. No. 1, is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that any amended complaint must be filed within **thirty (30) days** of the filing date of this Order; and the Court further

**ORDERS** that, if Plaintiff timely files an amended complaint, it shall be referred to Magistrate Judge Evangelista for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case without further order of this Court; and the Court further

**\*3 ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules. [2]

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2778360

---

### Footnotes

1    Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

2    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein.

**WESTLAW**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:26-cv-01134-AJB-ML    Document 4    Filed 07/08/26    Page 21 of 21

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.